**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 12-23539-CIV-MORENO/TORRES

JACQUELINE Y. DEAN JACKSON
PINER, o/b/o J.J.P., a minor,

      Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security
Administration,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

*I.   INTRODUCTION*

This matter is before the Court on the cross-motions for summary judgment filed by Plaintiff Jacqueline Y. Dean Jackson Piner ("Plaintiff") on behalf of her minor son, J.J.P. ("Claimant") [D.E. 20], and by Defendant Carolyn W. Colvin, Acting Commissioner of Social Security Administration ("Commissioner"). [D.E. 25]. The motions were referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Magistrate Rule 1(c) and (d), Local Rules of the United States District Court for the Southern District of Florida. [D.E. 10].

Plaintiff seeks review of the final decision of the Commissioner denying Claimant's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 *et seq*. The cross-motions present the following issues: whether the proper legal standards were applied and

whether there exists substantial evidence in the record as a whole to support the determination by the Administrative Law Judge ("ALJ") that Claimant is not disabled under the Social Security Act.

Under the limited standard of review that governs this case, the Court finds that substantial evidence supports the ALJ's decision. Therefore, for reasons stated below, we recommend that Plaintiff's Motion for Summary Judgment [D.E. 20] be Denied, the Commissioner's Motion for Summary Judgment [D.E. 25] be Granted, and the ALJ's Decision be Affirmed.

## II. PROCEDURAL HISTORY

On August 16, 2007, Plaintiff filed an application for SSI benefits on behalf of Claimant, alleging disability as of July 14, 2007, the date he was born. The disability claim was denied initially on October 11, 2007 and on reconsideration on February 23, 2009.

On September 15, 2010, an ALJ held a hearing at which Plaintiff, who was represented by counsel, testified. [Tr. 34-55].[1] On November 23, 2010, the ALJ issued a decision finding that Claimant was not disabled under the Act. [Tr. 13-29]. The ALJ determined that Claimant had two severe impairments, premature birth and asthma, but nevertheless concluded that he did not have an impairment or combination of impairments that met or medically or functionally equaled any of the listed impairments. The ALJ's unfavorable decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. [Tr. 1-3].

---

[1] This abbreviation refers to the transcript of the administrative proceedings in this case filed by the Commissioner on June 10, 2013. [D.E. 17].

On September 28, 2012, Plaintiff filed on Claimant's behalf a Complaint seeking judicial review in this Court and reversal of the Commissioner's decision. [D.E. 1]. Defendant filed an Answer to the Complaint [D.E. 16]; Plaintiff moved for summary judgment [D.E. 20]; Defendant responded and also moved for summary judgment [D.E. 25, 26]; and Plaintiff filed a reply thereto [D.E. 27]. The motions are ripe for adjudication.

### III. STANDARD OF REVIEW

Judicial review of the ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record as a whole to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In testing for substantial evidence, the court does not "re-weigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Instead, so long as the facts are supported by substantial evidence, the ALJ's findings are conclusive and we must defer to the ALJ's decision even if the evidence may preponderate against it. 42 U.S.C. § 405(g); *Miles*, 84 F.3d at 1400; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004). However,

no presumption of validity attaches to the Commissioner's conclusions of law. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## IV.   ANALYSIS

Plaintiff argues that the ALJ erred in four respects. First, Plaintiff claims that the ALJ did not properly evaluate the opinion of the treating pediatrician, Rozalyn Paschal, M.D. Next, Plaintiff contends that the ALJ did not properly evaluate and weigh the opinion of the examining speech-language pathologist, Denise Murphy, M.S., C.C.C. Plaintiff also asserts that the ALJ did not make proper credibility findings with regard to her (Plaintiff's) testimony from the administrative hearing. Finally, Plaintiff argues that the ALJ's determination that Claimant's impairments are not functionally equivalent to the listings is not supported by substantial evidence in the record. For these reasons, Plaintiff concludes that the Commissioner's decision should be vacated and remanded with a finding of disability and for the calculation of benefits or, alternatively, for further administrative proceedings.

### A.   *The Framework for Determining Disability in Children*

To be eligible for SSI benefits, a child under the age of 18 must show that he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also* 20 C.F.R. § 416.906. To determine whether a child is disabled, the ALJ follows a three-step sequential process outlined

in the Social Security Regulations. *Id.* § 416.924(a). The child (claimant) bears the burden of establishing that he is disabled. *Id.* § 416.912(a).

At the first step, the ALJ must determine whether the child is engaged in substantial gainful activity. *Id.* § 924(a). Next, the ALJ must determine whether the child suffers from a severe impairment or combination of impairments. *Id.* Finally, at the third step, the ALJ must determine whether the child's impairment(s) meets, medically equals, or functionally equals the criteria contained in one of the List of Impairments. *Id.*

When analyzing whether a child's impairment(s) functionally equals a listing, the ALJ considers six "domains" which are "broad areas of functioning intended to capture all of what a child can and cannot do." *Id.* § 416.926a(b)(1). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.* §§ 416.926a(b)(1)(i)-(vi). To functionally equal a listed impairment, the child must have "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A "marked" limitation is one that is "'more than moderate' but 'less than extreme'" and "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i).[2] An "extreme" limitation is one that

---

[2] Additionally, in the health and physical well-being domain, a child may have a "marked" limitation if:

> you [the child] are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs. For purposes of this domain, "frequent

"interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities . . . . [but] does not necessarily mean a total lack or loss of ability to function." *Id.* § 416.926a(e)(3)(i).

No single piece of evidence taken in isolation is dispositive of whether the child has a "marked" or "extreme" limitation in any particular domain. *Id.* § 416.924a(a); *see also id.* §§ 416.926a(b), (e)(4). The ALJ must consider "all relevant evidence" including medical evidence, test scores, school records, and information from people who know the child and can provide evidence regarding his or her functioning such as the child's parents, caregivers, and teachers. *Id.* § 416.924a(a); *see also id.* §§ 416.926a(e)(4)(i)-(ii).

To establish that an impairment meets a listing, the child must show that his impairment meets all of the specified medical criteria. *Wilson v. Barnhart,* 284 F.3d 1219, 1224 (11th Cir. 2002) ("To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement."); *Bell v. Bowen,* 796 F.2d 1350, 1353 (11th Cir. 1986) ("[W]hen a claimant contends that he has an impairment meeting the listed impairments. . . ., he must present specific

---

> means that you have episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

20 C.F.R. § 416.926a(e)(2)(iv).

medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such equivalency."); *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir.1991) ("Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings."). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).[3]

> To meet Listing 103.03, a child must suffer from asthma with:
>
> B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks;
>
> Or
>
> C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:
>
>> 1. Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or
>>
>> 2. Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12–month period[.]

---

[3] The Eleventh Circuit does not require that the ALJ's finding that a claimant does not meet a listing be mechanically recited in the decision; rather, it may be implied from the record. *See, e.g, Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 103.03. Asthma "attacks" are defined in Section 3.00C as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting." *Id.* § 3.00C.

### B. *Substantial Evidence Supports the ALJ's Decision*

#### 1. *Meet or Medically Equal Listing 103.03*

We find that substantial evidence in this record supports the ALJ's determination that Claimant did not meet or medically equal any listed impairment and in particular Listing 103.03 for asthma in children.

The ALJ relied on the medical treatment records of Claimant's treating pediatrician, Dr. Paschal,[4] which reflect that Claimant had various childhood ailments and conditions including asthma, but the treatment for the respiratory conditions was reasonably routine and conservative and never required aggressive emergency care in the pediatrician's office or even a brief hospital admission. Dr. Paschal frequently reported normal HEENT and cardiovascular and lung findings, sometimes even when Claimant presented with complaints of colds or coughing, e.g., on January 22, 2008; March 10, 2008; June 30, 2008; July 21, 2008; December 8, 2008; February 20, 2009; June 5, 2009; July 13, 2009; and July 27, 2009. [Tr. 209, 208, 198, 197, 191, 234, 233, 232, 231].

---

[4] The ALJ indicated, and we agree, that Dr. Paschal's "complete treatment notes [were] sufficient to support a decision" on disability. [Tr. 16].

Asthma attacks that require only at-home care are not sufficiently severe to meet or equal the listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 3.00C, 103.03B ("requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting"). Thus, although Claimant's treatment consists of asthma medication and the use of a nebulizer, such treatments do not satisfy the listing. *See, e.g., Johnson v. Barnhart*, 148 F. App'x 838, 842 (11th Cir. 2005) (finding that claimant's use of a nebulizer and daily asthma medication did not support the conclusion that this treatment was intensive or that claimant's flare-ups were as severe as the attacks that required hospitalization and satisfied the criteria of Listing 103.03B).

Absent from this record is any evidence establishing that Claimant had asthma attacks of the frequency and intensity required to meet Listing 103.03B, i.e., prolonged symptomatic episodes lasting one or more days and requiring intensive treatment in a hospital, emergency room, or equivalent setting, or that he had such attacks, in spite of prescribed treatment and requiring physician intervention, at least once every two months or at least six times a year over a consecutive twelve-month period.

Dr. Paschal's notes do not reflect office visits or even office treatments for asthma as often as contemplated by the regulations. Moreover, there is no documentation of hospital or emergency room visits in the record.[5] In fact, Plaintiff

---

[5] The only time Claimant was hospitalized was immediately after birth when he was taken to the critical care unit because he was born premature. [Tr. 181-83]. Physical examinations upon admission and discharge eight days later revealed everything was normal including his cardio-respiratory and neurological systems.

acknowledged at the hearing that Claimant had not been hospitalized overnight since birth. [Tr. 51]. She testified that she had become very skilled at using a nebulizer to treat Claimant's asthma at home [Tr. 46] and had taken him to the emergency room not more than two times in 2009 and not at all in 2010 (through the date of the hearing in September 2010) [Tr. 51].

Thus, the ALJ's determination that Claimant did not meet or medically equal Listing 103.03B is well-supported by the record. *See, e.g., Mize v. Comm'r of Soc. Sec.*, 431 F. App'x 778, 780-81 (11th Cir. 2011) (affirming the ALJ's finding that a minor child did not meet or medically equal Listing 103.03B for asthma where the child had only four non-routine visits to his doctor as a result of his asthma during the relevant twelve-month period); *Johnson*, 148 F. App'x at 842 (claimant failed to satisfy criteria for Listing 103.03B even though she suffered 10 asthma attacks over a 25-month period; the record contained no evidence of additional asthma attacks requiring intensive treatment equal to a hospitalization).

So, too, is the determination that Claimant's asthma did not meet or medically equal Listing 103.03C which contemplates asthma marked by "persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 103.03C. Dr. Paschal's treatment notes identify only three office visits during which Claimant was wheezing: August 24, 2009, August 31, 2009, and March 30, 2010. [Tr. 225, 229-30]. Further, nothing in the treatment notes

suggests that the wheezing was persistent or acute enough to warrant more intensive treatment.

Even the Asthma Questionnaire that Dr. Paschal completed on February 2, 2009 [Tr. 240-43] supports a finding that Claimant did not meet or medically equal Listing 103.03C. On the questionnaire, Dr. Paschal opined that Claimant satisfied the criteria for a listing-level asthma.[6] The pediatrician indicated her diagnosis was based on "intermittent" episodes of wheezing treatable by a home nebulizer and medication. But under the regulation, Claimant had to show he suffered from persistent low-grade wheezing between acute attacks. There is no evidence in the record that he did, thus the ALJ's finding that Claimant did not meet or medically equal Listing 103.03C is well-supported by the record. *See, e.g., Johnson*, 148 F. App'x at 841 (claimant failed to satisfy criteria for Listing 103.03C because, although she suffered from bouts of wheezing from time to time, the record showed many times when no wheezing was noted); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (an impairment that can be controlled with treatment is not disabling).

We find baseless the assertion that the ALJ improperly weighed Dr. Paschal's February 2009 opinion wherein the doctor concluded that Claimant met the listing for

---

[6] Dr. Paschal indicated on the questionnaire that Claimant met or medically equaled Listing 3.03B because he had "asthma exacerbations" that required an office or emergency room visit for treatment "at least every 2 months or 6 times a year." [Tr. 243]. Listing 3.03B is a listing for asthma in *adults*, but the definition is exactly the same as the definition in Listing 103.03B, asthma for children. So, if the criteria for Listing 3.03B was not met, neither was the criteria for Listing 103.03B. There thus was no need for the ALJ to re-contact Dr. Paschal to solicit her opinion of Claimant's limitations using the criteria for the correct listing, i.e., Listing 103.03B. [D.E. 20 at 10-11].

asthma. A treating physician's testimony "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is required to give specific reasons for according less weight to a treating physician's opinion. *Id.* Good cause for giving less weight to a treating physician's opinion exists where the physician's opinions were conclusory or inconsistent with his own medical records. *Id.*; *see also Crawford*, 363 F.3d at 1159 (treating physician's opinion that claimant was permanently and totally disabled was inconsistent with his own treatment notes, unsupported by the medical evidence, and appeared to be based on the claimant's subjective complaints of pain).

In this case, the ALJ explained why she accorded "less than controlling weight" to Dr. Paschal's opinion: the pediatrician's opinion was inconsistent with her own treatment records. [Tr. 21-22]. Those records documented the number of visits Claimant made to Dr. Paschal's office and the emergency room as well as the severity of his asthma over time. The records establish that the frequency and intensity of Claimant's asthmatic "exacerbations" or episodes were insufficient under the regulations to establish the existence of a listed impairment. As the ALJ stated, "[T]he opinion in question departs substantially from the rest of the evidence of record." [Tr. 22]. Therefore, good cause existed for the ALJ to give less than substantial or considerable weight to Dr. Paschal's opinion.

### 2. *Functionally Equal Listing 103.03*

We find that substantial evidence also supports the ALJ's determination that Claimant did not functionally meet the listings. The ALJ concluded that Claimant had

no limitations in the domains of acquiring and using information; attending and completing tasks; interacting and relating with others; and moving about and manipulating objects; and less than marked limitations in the domains of caring for yourself and health and physical well-being. [Tr. 23-29]. Plaintiff challenges only two of these findings which are discussed below.

    a.    <u>Interacting and Relating with Others</u>

In determining that Claimant had no limitation in interacting and relating with others, the ALJ accepted the February 20, 2009 reconsidered opinion of the state agency physician,[7] David Guttman, M.D., [Tr. 219-24], in the absence of any medical evidence to the contrary. [Tr. 26]. Dr. Guttman reviewed all of Claimant's records and opined that the child did not have any limitation in the functional equivalent domain of interacting and relating with others. [Tr. 221].

The ALJ considered, then discounted, Plaintiff's testimony that Claimant was aggressive and had difficulty getting along with others. [Tr. 26]. Had the problem been of the magnitude alleged, the ALJ reasoned, Plaintiff would have sought treatment for Claimant's mental or emotional problems, something she failed to do. The ALJ also noted that Plaintiff previously reported that Claimant could speak and understand English [Tr. 139] which was contrary to Plaintiff's position at the administrative hearing regarding her son's allegedly serious communication and

---

    [7]    State agency medical consultants are experts in the Agency's disability programs and their opinions may be relied upon to support the denial or allowance of a claim. 20 C.F.R. §§ 416.927(e)(1)-(2); *see also Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008).

language problems. We find substantial evidence supports the ALJ's finding of no limitation in interacting and relating with others.

To support the claim that Claimant had at least a marked limitation in this domain, Plaintiff relies primarily on a report prepared by Ms. Murphy, the speech-language pathologist who evaluated Claimant approximately two weeks before the administrative hearing. [Tr. 247-51]. Ms. Murphy concluded that Claimant had moderate to severe delays in both receptive and pragmatic language and a severe delay in expressive language. [Tr. 250]. Plaintiff contends that Ms. Murphy's observations and opinions support her own testimony about the difficulty Claimant had interacting with other children, how he would lose control and hit them, and his difficulty speaking and how he instead babbled when trying to speak more than three or four words. [Tr. 47-48].

We find that the ALJ articulated adequate reasons for giving little weight to Ms. Murphy's report. [Tr. 22]. The ALJ expressed suspicion that Plaintiff obtained the evaluation so close in time to the administrative hearing in "an effort to generate evidence" that would support an award of benefits rather than "in an attempt to seek treatment for symptoms." [Tr. 22]. As the ALJ noted, Claimant received a prescription for speech therapy on June 5, 2009 [Tr.233], yet the evaluation was not conducted for more than a year, not until September 1, 2010, two weeks before the hearing.[8]

Importantly, the ALJ outlined her concerns about the objectivity and reliability of Ms. Murphy's report. The ALJ noted that Ms. Murphy saw Claimant on only one

---

[8] Plaintiff's counsel did inform the ALJ at the hearing that Plaintiff had tried for a very long time to have Claimant evaluated. [Tr. 39-40].

occasion, was paid for her work, and much of what she reported was based on what Plaintiff told her. Under such circumstances, the ALJ observed, "the context in which [the report] was produced cannot be entirely ignored." [Tr. 22]. The ALJ questioned Ms. Murphy's conclusions that were based in part on "[s]peech output [that] was limited to experiences at home or his environment" [Tr. 248]; as the ALJ explained, early exposure to education is a factor that must be considered in evaluating childhood disability. Further, the ALJ took issue with Ms. Murphy offering assessments and opinions that were outside the areas of her expertise as a speech-language pathologist and for which she was not an acceptable medical source, e.g., her diagnosis of Oppositional Defiant Disorder and Attention Deficit Hyperactive Disorder. [Tr. 250]. It is also noteworthy that Claimant's twin brother (who receives disability benefits) was present in the room during some of the evaluation; at some point, according to Ms. Murphy, Claimant "required separation from the other child to complete the evaluation." [Tr. 249].

We find it significant that the treating pediatrician who had regular contact with Claimant since birth never reported any concern about how Claimant interacted with and related to others. Moreover, there is no record of any referral to a psychologist or mental health or behavioral specialist. We conclude that the ALJ's decision to accord little weight to Ms. Murphy's report is supported by the record.

Plaintiff also argues that the ALJ erred by not making an explicit finding as to her credibility. She points out that she provided the only subjective testimony about Claimant's conditions and, because the ALJ found her statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms to be

unsubstantiated by objective medical evidence, an explicit credibility finding was necessary.

"If proof of disability is based upon subjective evidence and a credibility determination is, therefore, critical to the decision, 'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting *Tieniber v. Heckler,* 720 F.2d 1251, 1255 (11th Cir. 1983)).

The ALJ's reasons for discrediting Plaintiff's testimony are sufficiently clear as to amount to a specific credibility finding:   (i) testimony that Claimant did not speak but babbled was contradicted by Plaintiff's written statement that her son could speak and understand English; (ii) testimony that Claimant was extremely aggressive and could not get along with others was not documented in the record (other than in Ms. Murphy's report of September 1, 2010 which the ALJ did not fully credit) and, notably, was not reflected in the pediatrician's complete treatment notes; (iii) testimony that Claimant was in respiratory distress at birth is belied by hospital records showing his vital signs were normal the day of his birth and eight days later at discharge, and several mild episodes of desaturation that occurred within hours of his birth quickly subsiding and did not repeat; (iv) testimony that Claimant's condition necessitated numerous phone calls to his doctors is not reflected in Dr. Paschal's records; and (v) Plaintiff filed a disability application on behalf of Claimant approximately one month after his birth, notwithstanding the paucity of treatment records.

  b. <u>Health and Physical Well-Being</u>

The ALJ found that Claimant had less than a marked limitation in the health and physical well-being domain. [Tr. 28-29]. She again relied on the opinion of the state agency physician, Dr. Guttman, who opined that, despite Claimant's chronic otitis, history of asthma, rhinitis, and tubes in his ears, he had less than a marked limitation in the domain of health and physical well-being. [Tr. 222].

The ALJ also considered the medical record, noting the lack of hospitalization, limited number of emergency room treatments, Plaintiff's ability to care for Claimant at home, and Dr. Paschal's repeated diagnoses of Claimant as a "well" child. The ALJ found this evidence was completely at odds with the pediatrician's opinion that Claimant met the asthma listing. We agree that substantial evidence supports the ALJ's determination that Claimant suffered from a less than marked limitation in this domain.

Because substantial evidence supports the ALJ's determination that Claimant did not meet or medically or functionally equal any listed impairment, the conclusion that Claimant is not disabled under the Act should be affirmed.

### V. CONCLUSION AND RECOMMENDATION

Substantial evidence supports the ALJ's findings as noted in her November 23, 2010 Decision. Any errors did not prejudice Plaintiff and were harmless. For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [D.E. 20] be **DENIED**, that Defendant's Motion for Summary Judgment [D.E. 25] be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1); *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 20th day of April, 2014.

        /s/ *Edwin G. Torres*
        EDWIN G. TORRES
        United States Magistrate Judge